IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| J.S.T. CORPORATION and<br>J.S.T. SALES AMERICA, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>STEVEN C. GOLD, WENDY A. GOLD and<br>PROFESSIONAL BUSINESS CONSULTANTS<br>LLC,<br><br>    Defendants. | Case No. 19-cv-1667<br><br>JURY DEMANDED |

## COMPLAINT AND JURY DEMAND

Plaintiffs J.S.T. Corporation and J.S.T. Sales America, Inc. (jointly referred to as "JST"), by and through their attorneys, Kathryn A. Keppel of Gimbel Reilly Guerin & Brown LLP and John B. Stanis and Yulia Chembulatova of Masuda, Funai, Eifert & Mitchell, Ltd., for their Complaint against Defendants Steven C. Gold, Wendy A. Gold, individually and doing business as Professional Business Consultants, an unincorporated business, and Professional Business Consultants LLC (jointly referred to as "Professional Business Consultants"), state:

## PARTIES

1. J.S.T. Corporation is an Illinois corporation with its principal place of business located in Waukegan, Illinois.

2. J.S.T. Sales America, Inc. is an Illinois corporation with its principal place of business located in Waukegan, Illinois.

3. Steven Charles Gold ("Steve Gold" or "Gold"), previously known as Steven Charles Busche, is an individual residing in Pleasant Prairie, Wisconsin.

4. Wendy Ann Gold ("Wendy Gold"), previously known as Wendy Ann Busche, Priske-Busche and Wendy Ann Priske, is an individual residing in Pleasant Prairie, Wisconsin.

5. Professional Business Consultants LLC ("Professional Business Consultants") was organized as a Wisconsin limited liability company on March 22, 2019.

6. Upon information and belief, Wendy Gold is the sole member of Professional Business Consultants.

## JURISDICTION

7. This Court has subject matter jurisdiction over this case on diversity grounds pursuant to United States Code Title 28, Section 1332(a), as both Plaintiffs are citizens of the State of Illinois, all Defendants are citizens of states other than the State of Illinois, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## VENUE

8. Venue in this district is appropriate pursuant to 28 U.S.C. 1391(b)(1), as all defendants reside in this judicial district.

## BACKGROUND ALLEGATIONS

**A. JST.**

9. J.S.T. Corporation manufactures electronic components, such as connectors, crimped leads, harnesses and wire assemblies, that are used by its customers in producing a wide variety of electronic, industrial and automotive products.

10. J.S.T. Sales America, Inc. sells in North America the electronic components manufactured by J.S.T. Corporation, J.S.T. Mfg. Co., Ltd. in Japan and J.S.T. affiliates in other countries.

**B.     The Golds.**

11.     Steve Gold was employed as a member of JST's Accounting Department in Waukegan, Illinois from November 20, 2001 until he was terminated on December 30, 2018.

12.     At the time of his termination, Steve Gold held the title of Assistant Accounting Manager of JST.

13.     Substantially all of Gold's job duties were performed in Waukegan, Illinois.

14.     Although he held the title of Assistant Accounting Manager, in reality Gold operated as the head of JST's Accounting Department and was responsible for establishing, overseeing and managing all accounting and financial functions of JST, including accounts payable/receivable, cash receipts, reconciliation of bank statements, all banking relations and functions, such as generating electronic and wire payments, and all transactions in JST's general ledger and accounting system.

15.     Steve Gold and Wendy Gold are married to each other.

**B.     Professional Business Consultants.**

16.     Upon information and belief, Professional Business Consultants provides tax and financial advice to its clients.

17.     Before March 22, 2019, Wendy Gold operated Professional Business Consultants as an unincorporated sole proprietorship out of the Golds' home in Pleasant Prairie, Wisconsin.

**C.     Finkle.**

18.     John T. Finkle, III ("Finkle") was employed by JST from April 13, 1998 until he was terminated by JST on December 30, 2018.

19.     At the time of his termination, Finkle was JST's National Distribution Sales Manager.

3

20. As National Distribution Sales Manager, Finkle had overall responsibility for and control of JST's sale of its products in North America to authorized distributors who had entered into formal distributorship agreements with JST.

21. Finkle's primary place of business was at a JST office in Connecticut.

**C. Pedroli and JET.**

22. Kenneth J. Pedroli is an individual residing in Stony Brook, New York.

23. Pedroli is the principal owner and President of JET Components, Inc.

24. JET Components, Inc. ("JET Components") is a New York corporation with its principal place of business located in Islandia, New York.

25. Until it was terminated by JST on or about January 10, 2019, JET Components was an authorized distributor of JST's products in North America.

**D. Conspiracy Between Gold, Finkle, Pedroli and JET Components**

26. Starting in approximately 2012 (but no later than 2015) and continuing into 2018, Gold, Finkle, Pedroli and JET Components conspired, combined, and agreed with each other to intentionally and fraudulent steal products from JST.

27. To effectuate the conspiracy, JET Components submitted purchase orders to Finkle for the purported purchase of products from JST.

28. Finkle arranged for the shipment of the products to JET Components pursuant to JST's normal practices.

29. Finkle and Gold arranged for JST to issue invoices to JET Components for the products that were shipped to it.

30. However, Gold, Finkle, Pedroli and JET Components agreed in advance that JET Components would not pay any money to JST for those products.

31. Instead, as part of their scheme to defraud JST, Gold, Finkle, Pedroli and JET Components agreed that JET Components would pay only a portion of the invoiced amounts by issuing checks made payable to Finkle personally. Pedroli issued the checks in JET Components' name and then mailed them to Finkle in Connecticut.

32. Gold then manipulated and falsified JST's accounting records by, among other things, applying fictitious credits to JET Components' account with JST, with the intention and actual effect of preventing JST from discovering that JET Components was not paying JST anything for the JST products that were shipped to JET Components.

33. To compensate Gold for his role in this conspiracy, Finkle then issued his own checks to Gold for a portion of the money that JET Components had paid to Finkle. Gold then cashed the checks from Finkle and deposited them into one or more accounts controlled by Gold, Wendy Gold and/or Professional Business Consultants.

34. In late December 2018, JST received a telephone call from agents of the Federal Bureau of Investigation in Connecticut who advised JST that, in the course of investigating unrelated alleged criminal conduct of JST's employee Finkle, the FBI had reviewed Finkle's bank accounts and noticed numerous checks made payable to Finkle by JET Components, which they had identified as a distributor of JST's products.

35. In that first call with the FBI, JST confirmed that it would be unusual and inappropriate for a JST employee to personally receive payments from a distributor for products that were sold by JST. One of the participants on that first call with the FBI was Steve Gold.

36. The next day, the FBI called again to advise JST that, after the first call, they were again reviewing Finkle's bank records and found numerous checks issued personally by Finkle to

Gold, which had been cashed by Gold, that were issued shortly after Finkle cashed checks from JET Components.

37. From June 18, 2015 through December 30, 2018, pursuant to the agreement, conspiracy, and combination of Gold, Finkle, Pedroli and JET Components, over $3.8 million of JST's products were shipped to JET Components without any payment to JST for those products.

38. Based on their conspiracy to defraud JST, on or about February 18, 2019 Gold, Finkle and Pedroli were indicted and charged by the United States of America in the United States District Court for the District of Connecticut with conspiracy to commit mail and wire fraud, mail fraud and wire fraud, all in violation of 18 U.S.C. §§ 1341, 1343 and 1349 (Case Nos. 3:19-cr-00043-JCH-1, 2 and 3).

39. On April 29, 2019, Pedroli plead to guilty to engaging in a conspiracy with Gold and Finkle to commit mail and wire fraud upon JST.

40. On July 16, 2019, Finkle plead to guilty to engaging in a conspiracy with Gold and Pedroli to commit mail and wire fraud upon JST.

**E.     Gold's Direct Theft of Money from JST's Bank Accounts**

41. Beginning no later than 2012, Steve Gold was engaged in his own, more direct theft of money from JST's bank accounts.

42. As the *de facto* manager of JST's Accounting Department, Gold had complete and exclusive access to the monthly account statements that were issued to JST by its banks, including but not limited to JST's accounts with BMO Harris Bank ("BMO Harris").

43. Gold personally handled the monthly reconciliation of JST's accounts with BMO Harris.

44. Gold had complete and exclusive control of JST's ability to handle online banking with BMO Harris.

45. Gold had control over JST's accounting systems and records, including the ability to enter or change transactions for payments received by JST, payments made by JST, credits issued by JST and the like.

46. Branching off from its continuing investigation of Finkle, in December 2018 the FBI began investigating the criminal conspiracy of Gold, Finkle, Pedroli and JET Components.

47. As part of that investigation, the FBI obtained and reviewed Gold's personal bank and credit card records and in doing so found that a large amount of money had been electronically transferred from JST's bank accounts at BMO Harris in payment of one or more credit card accounts that were issued to Gold personally and used by Gold for his own personal benefit.

48. When the FBI reported this information to JST, JST asked BMO Harris to conduct a review of JST's accounts with BMO Harris to confirm whether money from JST's accounts had been paid to or for the benefit of Gold, either in payment of Gold's credit cards or otherwise.

49. After its own investigation, BMO Harris confirmed that, from January 2015 through December 2018, on over 100 separate occasions JST's money had been electronically transferred from JST's accounts to pay credit cards held in the name of Steve Gold.

50. Upon information and belief, based on BMO Harris' investigation, JST's own investigation and an investigation conducted by JST's independent accounting firm, from 2012 through 2018 Gold stole over $3 million from JST's accounts with BMO Harris.

51. As part of its investigations of the conspiracy of Gold, Finkle, Pedroli and JET Components and Gold's own direct theft of JST's money, in February 2019 agents of the FBI reported to JST that they had identified over $800,000 of JST's money in one or more bank

accounts that were held in the name of Wendy Gold's unincorporated sole proprietorship, Professional Business Consultants, and that they had reviewed checks issued and signed by Wendy Gold on the same accounts, effectively using JST's stolen money.

52. Approximately one month later, on March 22, 2019, Wendy Gold organized Professional Business Consultants as a Wisconsin limited liability company.

## CLAIMS

### FIRST CAUSE OF ACTION: CIVIL CONSPIRACY – STEVE GOLD

53. JST incorporates by this reference the allegations in Paragraphs 1 through 52 above.

54. From no later than 2015 and continuing into 2018, Steve Gold combined, agreed and conspired with Finkle and Pedroli to unlawfully deprive JST of its property, namely over 30,000,000 individual parts that were taken from JST's inventory, month-after-month and involving thousands of individual shipments, which were then delivered to JET Components with the understanding and agreement of Gold, Finkle and Pedroli that JST would not be paid the fair value of those products.

55. Gold personally acted in furtherance of this conspiracy by manipulating and falsifying JST's accounting records by, among other things, applying fictitious credits to JET Components' account with JST, with the intention and actual effect of preventing JST from discovering the theft of products from JST.

56. As a result of the concerted and combined acts of Gold, Finkle and Pedroli, JST has been damaged by the loss of its property, which was valued at no less than $3.8 million.

**SECOND CAUSE OF ACTION: CONVERSION – STEVE GOLD**

57. JST incorporates by reference the allegations in Paragraphs 1 through 56 above.

58. Together with his co-conspirators, Finkle and Pedroli, who were acting as Gold's agents for all purpose, Steve Gold assumed unauthorized and wrongful control, dominion, or ownership over JST's property, specifically, its product inventory.

59. JST had the right to those products.

60. JST has the absolute and unconditional right to immediate possession of the products.

61. However, because Pedroli and JET Components have already sold JST's products, any demand by JST for the return of the products which Gold, Finkle and Pedroli converted would be futile.

62. As a result of the conversion of its property by Gold, Finkle and Pedroli, JST has been damaged in an amount of no less than $3.8 million.

**THIRD CAUSE OF ACTION: CONVERSION – STEVE GOLD AND WENDY GOLD**

63. JST incorporates by this reference the allegations of Paragraphs 1 through 62 above.

64. Steve Gold and Wendy Gold assumed unauthorized and wrongful control, dominion, or ownership over JST's property, specifically, money that was wrongfully taken from JST's bank accounts.

65. JST has an absolute and unconditional right to immediate possession of its own money.

66. Upon information and belief, both Steve Gold and Wendy Gold have actively concealed their receipt, possession and use of JST's funds, thereby making futile any demand for the return of JST's money.

67. As a result of the conversion of its funds by Steve Gold and Wendy Gold, JST has been damaged in an amount of no less than $3 million.

**FOURTH CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY – STEVE GOLD**

68. JST incorporates by this reference the allegations of Paragraphs 1 through 67 above.

69. As a manager in JST's Accounting Department, Steve Gold held a position of trust and confidence, where he controlled JST's bank accounts, funds and accounting records.

70. Accordingly, Steve Gold owed duties of fidelity, loyalty and honesty to JST.

71. Steve Gold breached his fiduciary duties to JST by participating in and profiting from a combination, agreement, understanding and conspiracy with Finkle and Pedroli to misappropriate JST's inventory for his and their own personal benefits.

72. Steve Gold further breached his fiduciary duties to JST by improperly taking JST's funds for his own personal benefit and to the detriment of JST.

73. Steve Gold's breach of his fiduciary duties to JST has proximately caused injury to JST.

74. Steve Gold willfully and wantonly violated JST's rights by knowingly, and with deliberate intent, taking and appropriating JST's money, over which he had gained control in his capacity as the Assistant Accounting Manager and *de facto* manager of JST's Accounting Department, thereby entitling JST to punitive damages.

**FIFTH CAUSE OF ACTION: FRAUD – STEVE GOLD**

75. JST incorporates by this reference the allegations of Paragraphs 1 through 74 above.

76. From no later than 2015 and continuing into 2018, Steve Gold knowingly and intentionally made thousands of false statements of material facts in JST's bank reconciliations, accounts receivable ledger and other accounting records, both with respect to the combination,

10

agreement, understanding and conspiracy with Finkle and Pedroli to misappropriate JST's inventory and with respect to Gold's own direct theft of JST's funds from JST's bank accounts.

77. The intentionally false entries in JST's accounting records included, but were not limited to, misstating the amount of money received from JET Components and other customers, misstating expenses incurred by JST in the course of its business, applying fictitious credits to the accounts receivable of JET Components and other customers, and generating false and misleading financial reports containing such information.

78. Gold intended for JST to rely on the false entries that Gold made in JST's banking and accounting systems, and JST justifiably relied the false entries made by Gold and the related reports containing such information.

79. Gold's repeated and extensive falsification of JST's banking and accounting records had the intention, design and effect of preventing JST from discovering the theft of JST's product inventory by the combination of Gold, Finkle and Pedroli, as well as Gold's own theft of JST's money from its bank accounts.

80. Accordingly, Gold's fraud has proximately caused injury to JST.

**SIXTH CAUSE OF ACTION: UNJUST ENRICHMENT – STEVE GOLD, WENDY GOLD AND PROFESSIONAL BUSINESS CONSULTANTS LLC**

81. JST incorporates by this reference the allegations in Paragraphs 1 through 80 above.

82. Steve Gold, Wendy Gold and Professional Business Consultants have been directly and personally enriched and received the benefit of money that Steve Gold received from his role in the conspiracy to steal JST's product inventory and the money that Steve Gold directly stole from JST's bank accounts.

83. Upon information and belief, a large amount of JST's stolen money ended up in one or more bank accounts controlled by Steve Gold, Wendy Gold and/or Professional Business

Consultants, including but not limited to one or more banks account in the name of Professional Business Consultants.

84. It would be unjust for Steve Gold, Wendy Gold and/or Professional Business Consultants to retain without any justification the enrichment and benefit of the proceeds of the theft of JST's product inventory or the theft of JST's money, all to JST's detriment.

85. The retention of such benefits by Steve Gold, Wendy Gold and/or Professional Business Consultants violates fundamental principles of justice, equity and good conscience.

## RELIEF REQUESTED

Plaintiffs request judgment against Defendants as follows:

1. General damages based on the value of the products and money stolen from JST;

2. Punitive or exemplary damages, based on Steve Gold's breach of fiduciary duties and fraud;

3. All compensation previously paid to or for the benefit of Steve Gold during the period of time when he breached his fiduciary duties to JST, including but not limited to all salary, bonuses and benefits;

4. Attorneys' fees and costs of suit;

5. Pre-judgment interest; and

6. All other relief the Court may deem proper.

## JURY DEMAND

Plaintiffs demand a jury trial on all claims so triable.

Dated: November 12, 2019

                                      J.S.T. CORPORATION and
                                      J.S.T. SALES AMERICA, INC.

                                      /s/  John B. Stanis
                                      By One of its Attorneys

Kathryn A. Keppel
Wis. Bar No. 1005149
Attorney for Plaintiffs
Gimbel Reilly Guerin & Brown LLP
330 E. Kilbourn Ave. #1170
Milwaukee, Wisconsin 53202
Tel.: (414) 271-1440
kkeppel@grgblaw.com


John B. Stanis, IL Bar No. 6198850
Attorney for Plaintiffs
Masuda, Funai, Eifert & Mitchell, Ltd.
203 N. LaSalle Street, Suite 2500
Chicago, Illinois  60601-1262
Tel.:  (312) 245-7500
Fax:  (312) 245-7467
jstanis@masudafunai.com