IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| J.S.T. CORPORATION and <br> J.S.T. SALES AMERICA, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> STEVEN GOLD, WENDY GOLD, <br> PROFESSIONAL BUSINESS <br> CONSULTANTS LLC, JOHN <br> FINKLE III, KENNETH PEDROLI, <br> and JET COMPONENTS, INC. <br><br> Defendants. | Case No. 20 C 340 |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

On November 12, 2019, J.S.T. Corp. and J.S.T. Sales America, Inc. (collectively JST) filed suit against Steven Gold, Wendy Gold, Professional Business Consultants, LLC (PBC), John T. Finkle III, Kenneth J. Pedroli, and JET Components, Inc. in the Eastern District of Wisconsin. JST asserted claims of civil conspiracy, conversion, breach of fiduciary duty, fraud, and unjust enrichment. In January 2020, the case was transferred to this district under 28 U.S.C. § 1404(a). Plaintiffs then filed an amended complaint that added a breach of contract claim, and the relevant facts of which are detailed below. The Golds and PBC moved to dismiss all of plaintiffs' claims. The Court orally denied the motion except as to Wendy Gold and ordered briefing on that aspect of the motion. For the reasons stated below, the Court denies Wendy Gold's motion to dismiss.

**Facts**

In considering JST's Rule 12(b)(6) motion to dismiss, the Court accepts the plaintiffs' factual allegations as true and draws all permissible inferences in their favor. *See, e.g., O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 342 (7th Cir. 2018).

In their amended complaint, JST alleges as follows. JST is an Illinois corporation that manufactures electronic components used in the production of a variety of automotive, industrial, and electronic products. Wendy Gold owned and operated PBC until March 22, 2019. PBC provided tax and financial advice to its clients.

Steven Gold, Wendy Gold's husband, was a member of JST's accounting department from November 20, 2001 until his termination on December 30, 2018 from his position as JST's Assistant Accounting Manager. In this position, he was responsible for "establishing, overseeing and managing all accounting and financial functions of JST, including accounts payable/receivable, cash receipts, reconciliation of bank statements, all banking relations and functions, such as generating electronic and wire payments, and all transactions in JST's general ledger and accounting system." Am. Compl. ¶ 21.

John Finkle was employed by JST from April 13, 1998 until his termination on December 30, 2018 from his position as the company's National Distribution Sales Manager. Kenneth Pedroli was the owner of JET Components which, until about January 10, 2019, was JST's authorized distributor in North America.

JST alleges that from around 2012 through 2018, Steven Gold, Finkle, and Pedroli, via JET, conspired to steal products from JST. Am. Compl. ¶ 32. The alleged scheme involved JET submitting purchase orders to Finkle for the purchase of JST

products, Finkle arranging for their shipment, and Finkle and Steven Gold issuing invoices to JET. By pre-arrangement, however, JET did not pay JST for the ordered products. Instead, JET paid a portion of the amount due to Finkle personally and then then sold the JST products and retained the proceeds for itself. JST alleges that Steven Gold "manipulated and falsified" JST's accounting records by issuing fake credits to JET, to make it look as though JET had paid in full for the products it acquired from JST. *Id.* ¶ 39. In return for the falsified accounting, JST alleges, Steven Gold received checks from Finkle "for a portion of the money that JET Components had paid" to him. *Id.* ¶ 40. Steven Gold then deposited those checks into "one or more accounts" controlled by him, Wendy Gold, and/or her business, PBC. *Id.* As a result, JST alleges, $484,000 of its stolen money ended up in bank accounts controlled by Wendy Gold and/or PBC despite the fact that neither had any kind of contractual or legal relationship with JST. *Id.* ¶¶ 95-96. JST alleges that Wendy Gold "issue[d] and signed checks on [those] same account[s] during one or more times when JST's money was held" in them. *Id.* ¶ 61B.

## Discussion

To overcome a Rule 12(b)(6) motion to dismiss, JST must allege facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). On a motion to dismiss, such "well-pleaded facts" are accepted "as true and [the Court] draw[s] all reasonable inferences in the [plaintiffs'] favor." *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1060–61 (7th Cir. 2020). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

3

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**1.      Conversion claim**

In count 3 of the amended complaint, JST alleges that Wendy Gold "assumed unauthorized and wrongful control, dominion, or ownership over JST's property," specifically, the "money that was wrongfully taken from JST's bank accounts," as to which JST alleges it had "an absolute and unconditional right to immediate possession." Am. Compl. ¶¶ 76-77. JST also alleges that she knowingly and actively "concealed the receipt, possession, and use" of JST's money and that she "issued and signed checks" on the accounts containing JST funds. *Id.* ¶¶ 61B, 78. On that basis, JST alleges that Wendy Gold is liable for conversion. *Id.* ¶¶ 76-78. Gold argues that the conversion claim should be dismissed because there is no allegation that she participated in the theft of JST's money or had any knowledge of the alleged scheme to defraud JST. Def.'s Mem. at 8.

"[T]o prove conversion under Illinois law, a plaintiff must show that: (1) he has a right to the property at issue; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. *Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735, 738 (7th Cir. 2016). Illinois law does not appear to require knowledge on the part of the defendant as an element of a conversion claim. To the contrary, "[r]elief in an action for conversion may be had without establishing malice, culpability or conscious wrongdoing. Thus, knowledge is not an element of the cause of action." *Douglass v. Wones*, 120 Ill. App. 3d 36, 41, 58 N.E.2d 514, 519 (1983). *See also Martel Enters. v.*

4

*City of Chicago*, 223 Ill. App. 3d 1028, 1032, 584 N.E.2d 157, 159 (1991) ("conversion…does not require proof of malice, culpability, or conscious wrongdoing").

Because Illinois law does not require the defendant's knowledge or intent to sufficiently plead a conversion claim, the Court denies Wendy Gold's motion to dismiss count 3.

**2.     Unjust enrichment claim**

In count 6 of the amended complaint, JST asserts an unjust enrichment claim against Wendy Gold (among others).  JST alleges that Gold was directly and personally enriched and received the benefit of JST's money that ended up in one or more bank accounts controlled by her and/or PBC, a business of which she is the sole member and manager.  Am. Compl. ¶¶ 6, 95.  JST argues that it would be unjust for Gold "to retain without any justification the enrichment and benefit" of JST's money.  *Id.* ¶ 97.

Gold argues that the unjust enrichment claim is deficient because it does not allege any acts by her that would "form a basis for an independent cause of action" or "form the basis of a tort."  Def.'s Mem. at 11.  She cites to Seventh Circuit authority, specifically a decision in which the court stated that a sufficiently pled unjust enrichment claim "usually" arises from "improper conduct" that "form[s] the basis of another claim against the defendant in tort, contract, or statute," and thus the "unjust enrichment will stand or fall with the related claim."  *Id.* (quoting *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011)).

Aside from the fact that JST *has* alleged an independent tort claim against Gold—the conversion claim just discussed—she reads too much into this language from *Cleary*.  The Seventh Circuit did not hold that to survive, an unjust enrichment claim

5

must be based on an underlying, independent claim. It simply stated that this is "usually" the case. And the court specifically noted that "the Illinois Supreme Court appears to recognize unjust enrichment as an independent cause of action." *Cleary*, 656 F.3d at 516. Although there appears to be some split in Illinois authority on this point, there is no basis to say definitively that to survive, an unjust enrichment claim must be based on an underlying, standalone tort claim. *Id.* at 516-17. For these reasons, the Court declines to dismiss count 6 as to Wendy Gold.

## Conclusion

For the reasons stated above, this Court denies Wendy Gold's motion to dismiss and directs her to answer the amended complaint within 21 days of this order. The parties are directed to confer regarding settlement and to attempt to agree upon a discovery and pretrial schedule to propose to the Court. A joint status report is to be filed by May 17, 2020. The case is set for a status hearing on May 26, 2020 at 9:30 a.m.

Date: April 20, 2020

_____
MATTHEW F. KENNELLY
United States District Judge