IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| J.S.T. CORPORATION and J.S.T. SALES AMERICA, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>STEVEN GOLD, WENDY GOLD, PROFESSIONAL BUSINESS CONSULTANTS LLC, JOHN FINKLE III, KENNETH PEDROLI, and JET COMPONENTS, INC.<br><br>Defendants. | Case No. 20 C 340 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

J.S.T. Corp. and J.S.T. Sales America, Inc. (collectively, JST) have sued Steven Gold, Wendy Gold,[1] Professional Business Consultants, LLC (PBC), John Finkle III, Kenneth Pedroli, and JET Components, Inc., alleging claims of civil conspiracy, conversion, breach of fiduciary duty, fraud, and unjust enrichment. Pedroli has moved to dismiss the claims against him under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, and Pedroli and JET Components have moved under 28 U.S.C § 1404(a) to transfer this case to the Eastern District of New York or, in the alternative, the District of Connecticut.

---

[1] The Court will refer to Steven and Wendy Gold by their first names to avoid confusion.

## Background

### 1. Factual background

The Court accepts the facts in the complaint as true and considers "matters outside of the pleadings to resolve factual questions pertaining to jurisdiction [and] process." *Deb v. SIRVA, Inc.*, 832 F.3d 800, 808–809 (7th Cir. 2016).

JST is an Illinois corporation that manufactures electronic components. Its principal place of business is in Waukegan, Illinois, and it has an office in Connecticut. Steven was a member of JST's accounting department. He worked in the Illinois office and lives in southeastern Wisconsin. John Finkle III was JST's National Distribution Sales Manager, and he worked from its Connecticut office. Kenneth Pedroli owns JET Components, which was one of JST's authorized distributor in North America. Wendy is Steven's wife, and Professional Business Consultants LLC (PBC) is a tax and financial consulting firm she owned.

JST alleges that from around 2012 through 2018, Steven, Finkle, and Pedroli conspired to steal products from JST. As part of the alleged scheme, JET Components would buy products from JST. By pre-arrangement, however, JET Components would not pay JST for the ordered products. Instead, JET Components would pay part of the amount due to Finkle personally and would then sell the products and retain the proceeds for itself. To make it appear as though JET Components had paid JST in full, Steven falsified JST's accounting records. JST alleges that Finkle paid Steven for falsifying the records and that Steven deposited these payments into accounts controlled by him, Wendy, and/or PBC. JST also alleges that as part of an apparently separate scheme, Steven transferred money from JST directly into his personal bank

and credit card accounts, and Wendy issued at least one check from one of those accounts.

The FBI investigated the just-described schemes. In February 2019, Pedroli, Finkle, and Steven were indicted and charged in a federal court in Connecticut. Each pleaded guilty to various charges. Pedroli was sentenced to probation; Finkle was sentenced to 24 months in prison and is serving his sentence at a prison in northwestern New York; and Steven is awaiting sentencing.

### 2. Procedural background

In November 2019, JST sued Wendy, Steven, and PBC in the Eastern District of Wisconsin. In January 2020, Wendy, Steven, and PBC moved to transfer the case to this district. Two weeks later, the parties filed a stipulation to transfer the case to this district, which the Wisconsin district court granted.

In February 2020, before this Court, JST filed an amended complaint, asserting claims of civil conspiracy, conversion, breach of fiduciary duty, fraud, and unjust enrichment. It added Finkle, Pedroli, and JET Components as parties. Against Pedroli in particular, JST asserted civil conspiracy, conversion, and fraud claims.

Before the case was transferred, Wendy, Steven, and PBC had filed a motion to dismiss for failure to state a claim. In January 2020, the Court orally denied the motion except as to Wendy and ordered briefing on that aspect of the motion. In April 2020, the Court denied the motion to dismiss the claims against Wendy. *J.S.T. Corp. v. Gold*, No. 20 C 340, 2020 WL 1914640, at *3 (N.D. Ill. Apr. 20, 2020).

In April 2020, Pedroli filed a motion to dismiss the claims against him, and Pedroli and JET Components filed motions to dismiss claims as improperly joined and

to transfer the case under 28 U.S.C § 1404(a). The Court denied Pedroli's motion to dismiss to the extent Pedroli sought dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction or standing, and it overruled Pedroli and JET Components' arguments for dismissal based on improper joinder. Dkt. no. 54. The Court ordered briefing on the remainder of Pedroli's motion to dismiss—seeking dismissal under Rule 12(b)(2) for lack of personal jurisdiction—and on the motion to transfer. On July 16, 2020, the Court held a hearing via video on both of those motions.

## Discussion

### A. Motion to dismiss

Pedroli has moved to dismiss the claims against him for lack of subject-matter jurisdiction and for lack of personal jurisdiction. As indicated, only the contention regarding personal jurisdiction remains in dispute.

The plaintiff bears the burden of establishing that personal jurisdiction exists. *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020). When a district court bases its determination solely on written materials and not an evidentiary hearing, the plaintiff must make only a *prima facie* showing of personal jurisdiction. *Id.* at 392–93. Where, as here, a defendant submits affidavits regarding personal jurisdiction, a court will accept as true any facts in the affidavits that do not conflict with the complaint or the plaintiff's other submissions. *Id.* at 393. But "[w]here there is a factual conflict between the record" and the affidavits, a court will resolve it in the plaintiff's favor. *Id.*

A federal court hearing a case pursuant to diversity jurisdiction (as in this case) has jurisdiction over a defendant if a state court in the forum state would have jurisdiction over the defendant. *See, e.g.*, *Matlin v. Spin Master Corp.*, 921 F.3d 701,

705 (7th Cir. 2019). Because there generally "is no operative difference between Illinois constitutional and federal constitutional limits on personal jurisdiction," the Court analyzes personal jurisdiction using the framework provided by federal due process requirements. *See Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015) (internal quotation marks omitted).

Due process permits a court to exercise personal jurisdiction over an out-of-state defendant if he has had "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Ofc. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). "The defendant must have deliberately established these contacts, or, in other words, he must have purposefully availed himself of the forum state, 'such that he should reasonably anticipate being haled into court there.'" *Philos Techs.*, 802 F.3d at 913 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985)).

The parties dispute whether Pedroli had sufficient relevant contacts for this Court to exercise jurisdiction. "For a State to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis added). A court's inquiry into specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Id.* at 283–84 (internal quotation marks omitted). This "relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Id.* at 284 (internal quotation marks omitted). In addition, in conducting the minimum

5

contacts analysis, courts look "to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285.

JST contends that Pedroli had sufficient contacts with Illinois because he knew that JST was an Illinois company, formed a longstanding business relationship with it, and then "capitalized" on that relationship to allegedly, through the conspiracy, defraud JST and convert its property.[2] Pl.'s Br. at 9. To the extent JST is contending that Pedroli's approximately 25-year relationship with JST gave him reason to know that his conduct would harm JST in Illinois, that does not suffice to establish personal jurisdiction. *See J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 577 (7th Cir. 2020) (defendant's conduct, not the plaintiff's injury, provides the basis for personal jurisdiction); *Ariel Investments, LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018) (defendant's knowledge that his conduct has raised "a potential for harm" in a state does not amount to minimum contacts with that state).

The Court's inquiry must focus on "whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290. On this point, JST has submitted evidence of various contacts Pedroli had with Illinois. Some of this evidence, however, involves contacts that occurred before and after the duration of the conspiracy. Those contacts are not relevant for personal jurisdiction because they are

---

[2] Pedroli's first affidavit reflects that he "does not know" whether he "was ever aware" that JST was an Illinois company. Pedroli's Mot. to Dismiss, Ex. 1, ¶ 10. JST has submitted evidence that would support a finding that Pedroli did know this, including a statement by Pedroli at his sentencing hearing that he had wanted to contact some of JST's high-level employees in Chicago, apparently to express his remorse, but had been advised not to do so. Resolving factual disputes in JST's favor, as the Court must do in considering a 12(b)(2) motion, the Court finds for the purposes of this opinion that Pedroli knew that JST was headquartered in Illinois.

6

not related to the claims in this lawsuit. *See, e.g.*, *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (for personal jurisdiction, the only relevant contacts are those related to the plaintiff's allegedly wrongful activity).

That said, JST also points to evidence of contacts Pedroli had with Illinois during or just before the timeframe of the conspiracy. For example, in December 2014, Pedroli sent an e-mail to Steven requesting Steven's contact information, and Steven replied with that information. A year later, in mid-December 2015, Pedroli sent Steven a standard, non-personalized electronic holiday card, and Steven replied by writing, "Thanks Ken and have a great Christmas and New Years [sic] if I don't talk to you." JST's Resp., Hicks' Decl., Ex. 4 at ECF p. 14. And in November 2015, Pedroli sent an e-mail to a JST employee based in Illinois and asked her to direct communications from JST to JET Components to him.

JST does not appear to dispute that these e-mails do not relate directly to its civil conspiracy, conversion, and fraud claims against Pedroli. *See N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) ("To support an exercise of specific personal jurisdiction, the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction."). JST, however, asserts that there were enough links between the e-mails and Pedroli's wrongful acts to give rise to the inference that Pedroli directed at least some of his allegedly wrongful conduct at Illinois. Specifically, JST contends that the timing of Pedroli's request for Steven's contact information and Pedroli's e-mail to the other JST employee—six months before and six months after the alleged conspiracy started, respectively—suggests those e-mails were related to the

7

conspiracy. In addition, JST contends that the tone and substance of Steven's response to the holiday card indicates that Pedroli and Steven were in contact with each other on a nonirregular basis, which might imply that they communicated with regard to the alleged conspiracy.

The Court is not, however, persuaded that the contacts Pedroli had with Illinois during the conspiracy were sufficiently related to the allegedly wrongful conduct in this case. This is because the primary links between these contacts and the allegedly conspiracy, fraud, and conversion are the people with whom Pedroli was in contact: Steven and the other JST employee. "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden*, 571 U.S. at 286. The other bases for an inference—the timing and the substance of Steven's response to the holiday card—are not "directly relate[d]" to Pedroli's allegedly wrongful conduct either. *See N. Grain Mktg.*, 743 F.3d at 492. Though, as indicated, JST need only make a *prima facie* showing of personal jurisdiction, *see Curry*, 949 F.3d at 392–93, it has not done so here. Indeed, JST's amended complaint contains no allegations, and JST cites no evidence, regarding Pedroli's knowledge of Steven's involvement in the conspiracy. Thus, even viewing the evidence in JST's favor, without more, the Court cannot conclude that Pedroli had enough contact with Illinois for it to exercise jurisdiction.

At the hearing, however, Pedroli conceded that if he knew that Steven was acting to carry out the conspiracy on Pedroli's behalf in Illinois, that would suffice to establish personal jurisdiction. To be sure, in an unpublished opinion, the Seventh Circuit has suggested that in Illinois the acts of a co-conspirator are not enough to create personal

8

jurisdiction, at least where there is no more than an "attenuated link" between the defendant and the forum state. *See Smith v. Jefferson Cty. Bd. of Ed.*, 378 F. App'x 582, 586 (7th Cir. 2010) (questioning whether personal jurisdiction can be based on the acts of a co-conspirator). But the commission of tortious acts by a defendant's agent may provide a relevant contact for personal jurisdiction over the defendant. *E.g.*, *Walden*, 571 U.S. at 285 ("[P]hysical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact.").

Steven's alleged role in the conspiracy was to falsify JST's accounting records in Illinois. JST contends that the e-mails between Steven and Pedroli rebuts Pedroli's statement in his affidavit that he had "never spoken to Steven Gold" and "did not know who he was." Pedroli's Mot. to Dismiss, Ex. 1, ¶ 9. Resolving this factual dispute in JST's favor, as it must at this stage in the proceedings, the Court agrees. JST has not, however, put forth any evidence that Pedroli knew Steven was falsifying records. As just discussed, the e-mails between Pedroli and Steven reflect only that Pedroli knew Steven and was in contact with him around the time of the conspiracy. Without more, the Court cannot conclude that Steven acted as Pedroli's agent in a way that would support personal jurisdiction.

For these reasons, the Court finds that JST has failed to show that Pedroli had sufficient minimum contacts with Illinois to permit the exercise of jurisdiction over him in this state. Accordingly, the Court need not decide whether requiring Pedroli to defend the suit here "offends 'traditional notions of fair play and substantial justice.'" *N. Grain*

9

*Mktg.*, 743 F.3d at 496 (quoting *Int'l Shoe*, 326 U.S. at 316). The Court grants Pedroli's motion to dismiss the claims against him.

**B.     Motion to transfer**

The Court next turns to Pedroli and JET Components' motion under 28 U.S.C § 1404(a) to transfer this case to the Eastern District of New York or, in the alternative, to the District of Connecticut. Because the Court has just dismissed the claims against Pedroli for lack of personal jurisdiction, the Court considers this motion only as it pertains to JET Components. JST filed a brief opposing the motion, and Steven, Wendy, and PBC also filed a joint brief opposing it.

Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought[.]" 28 U.S.C. § 1404(a). "Transfer is possible under Section 1404(a) only if the transferor court is a proper venue under the applicable venue provisions." 15 Charles Alan Wright & Arthur R. Miller ("Wright & Miller"), Federal Practice and Procedure § 3844 (4th ed. 2020); *see also* 28 U.S.C. § 1404(a).

JET Components has asked the Court to transfer the entire case; it has not asked the Court to sever it (or any other defendant) from this case and then transfer the severed case to another district. For the Court to transfer the entire case, venue must exist in the transferee district as to each defendant and each claim. *Pacer Glob. Logistics, Inc. v. Nat'l Passenger R.R. Corp.*, 272 F. Supp. 2d 784, 788 (E.D. Wis. 2003); *see also* Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3807 (4th ed. 2020). In a case such as this one, where venue is based on the location of the events underlying

10

the claims, venue is proper if the judicial district is one "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C.A. § 1391(b)(2).

JST, Steven, Wendy, and PBC contend that the Eastern District of New York and the District of Connecticut are not proper venues with regard to Wendy or PBC. JET Components does not address venue with regard to Wendy or PBC in its opening brief. In its reply brief, it asserts that venue in the Eastern District of New York and the District of Connecticut is proper with regard to Wendy and PBC—without making any effort to explain why that is so. Accordingly, the Court concludes that the Eastern District of New York and the District of Connecticut are not proper venues. *Hildreth v. Butler*, 960 F.3d 420, 429 (7th Cir. 2020) (arguments that are not developed are waived). Regardless, none of the events or omissions giving rise to the claims in the Eastern District of New York or the District of Connecticut appear to have involved Wendy or PBC. Thus even if JET Components had developed its argument concerning venue, there is no basis on which the Court could find that the Eastern District of New York and the District of Connecticut are proper venues. *See* 28 U.S.C. § 1391(b)(2). For these reasons, the Court denies JET Components' motion to transfer. Accordingly, the Court need not address JET Components' other arguments in support of transferring this case.

## Conclusion

For the foregoing reasons, the Court grants defendant Pedroli's motion to dismiss [dkt. no. 48] and dismisses all of the claims against Pedroli due to a lack of personal jurisdiction. Pedroli's motion to transfer is therefore moot. The Court denies JET

11

Components' motion to transfer [dkt. no. 51].

```
                                        _____
                                              MATTHEW F. KENNELLY
                                           United States District Judge
```

Date: August 16, 2020